UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

DAVID B. SILIPIGNO,

                         Plaintiff,

    -against-                                      1:15-CV-0017 (LEK/CFH)

UNITED STATES OF AMERICA,

                         Defendant.

## MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

Plaintiff David B. Silipigno commenced this action against the United States on January 7, 2015, to recover tax refunds for the 2004 and 2005 tax years. Dkt. No. 1 ("Complaint") ¶ 1. Plaintiff seeks a refund for the 2004 tax year in the amount of $806,586, plus statutory interest, due to a net operating loss ("NOL") carryback from the 2009 tax year. Id. ¶ 13. He also seeks a refund for the 2005 tax year in the amount of $509,752, plus statutory interest, due to a NOL carryback from the 2007 tax year. Id. ¶ 13.[1]

On October 11, 2016, both parties moved for summary judgment. Dkt. No. 27 ("Plaintiff's Motion"); Dkt. No. 26 ("Defendant's Motion"); see also Dkt. No. 27-1 ("Plaintiff's Memorandum"); Dkt. No. 27-2 ("Plaintiff's Statement of Material Facts"); Dkt. No. 26-20 ("Defendant's Memorandum"); Dkt. No. 26-1 ("Defendant's Statement of Material Facts"). On November 29, 2016, the parties filed memoranda in opposition. Pl.'s Opp.; Dkt. No. 29-8 ("Plaintiff's Responsive Statement of Material Facts"); Dkt. No. 30 ("Defendant's Opposition");

---

[1] The Complaint includes a third cause of action regarding Plaintiff's alleged entitlement to restitution. Id. at 6. However, Plaintiff consented to the dismissal of this claim. Dkt. No. 29 ("Plaintiff's Opposition") at 1.

Def.'s Opp., Ex. 1 ("Defendant's Responsive SMF"). The Government also filed a reply to Plaintiff's Opposition on December 8, 2016. Dkt. No. 34 ("Defendant's Reply").[2] For the reasons stated below, Plaintiff's motion for summary judgment is denied, Defendant's motion for summary judgment is granted in part, and the Court dismisses Plaintiff's first claim for lack of subject matter jurisdiction.

## II. BACKGROUND

Plaintiff is an individual taxpayer residing in Saratoga Springs, New York. Pl.'s SMF ¶ 1; Def.'s SMF ¶ 1. Since 1990, he has had a diverse business career, working for, owning, and investing in a number of businesses. Pl.'s SMF ¶ 2; Def.'s SMF ¶ 1; Pl.'s Responsive SMF ¶ 1. As relevant to the issues before the Court, Plaintiff was a consultant to First Guarantee Mortgage, LLC ("FGM"), a mortgage brokering company, from 2000 to 2008 or 2009. Pl.'s SMF ¶ 2; Def.'s SMF ¶ 1; Pl.'s Responsive SMF ¶ 1. He was the sole owner of Saratoga Venture Capital, LLC ("SVC"), a venture capital business, and Consumer Direct Marking ("CDM"), a telemarketing leads company. Pl.'s Responsive SMF ¶ 10; Def.'s Second Responsive SMF ¶ 10. He was also an investor, through contributions made by SVC and CDM, in Drug Risk Solutions, LLC ("DRS"), a drug testing company that filed for bankruptcy in 2006. Pl.'s Responsive SMF ¶ 11–12; Def.'s Second Responsive SMF ¶ 11–12.

### A. Tax Returns

Plaintiff brought this action to recover tax refunds for the 2004 and 2005 tax years attributable to NOL carrybacks from the 2009 and 2007 tax years, respectively. Compl. ¶ 13.

---

[2] The Government submitted a Second Responsive Statement of Facts in the same document as its Reply. To avoid confusion, the paragraphs beginning on page one of the Reply are cited as "Def.'s Second Responsive SMF ¶ ___."

2

"Net operating loss carryback is a form of income averaging that permits a taxpayer to use current losses to reduce taxable income in prior years." In re First Cent. Fin. Corp., 269 B.R. 481, 488–89 (Bankr. E.D.N.Y. 2001), aff'd, 377 F.3d 209 (2d Cir. 2004). NOLs are regulated by 26 U.S.C. § 172. A claim for refund attributable to an NOL puts at least two tax returns at issue: The return for the year in which the NOL occurred and the return for the year to which the NOL is being applied. Therefore, the tax returns directly relevant to Plaintiff's refunds are from the 2004, 2005, 2007, and 2009 tax years.

Plaintiff timely filed (with extensions) his 2004 U.S. Individual Income Tax Return (Form 1040) on October 17, 2005. Pl.'s SMF ¶ 7; Def.'s Responsive SMF ¶ 7. Plaintiff reported $10,659,032 in total income and paid $2,536,431 in federal taxes. Dkt. No. 26-7, Ex. D2, at 2747–48.

Plaintiff timely filed (with extensions) his 2005 U.S. Individual Income Tax Return (Form 1040) on October 16, 2006. Pl.'s SMF ¶ 8; Def.'s Responsive SMF ¶ 8. Plaintiff reported $8,286,060 in total income and paid $2,630,185 in federal taxes. Dkt. No. 26-8, Ex. D3, at 2–3.[3] He also filed an Amended U.S. Individual Income Tax Return (Form 1040X) for the 2005 tax year on November 29, 2007, seeking a refund of $9,723. Def.'s SMF ¶ 6; Pl.'s Responsive SMF ¶ 6.

Plaintiff did not timely file (with extensions) his 2007 U.S. Individual Income Tax Return (Form 1040) on or before October 15, 2008. Def.'s SMF ¶ 5; Pl.'s Responsive SMF ¶ 5. He filed his Form 1040 for his 2007 taxes on October 4, 2010, claiming an NOL of $1,414,014. Def.'s

---

[3] The cited page numbers for this Exhibit refer to those generated by the Court's electronic filing system ("ECF")

3

SMF ¶ 5; Pl.'s Responsive SMF ¶ 5. He also timely filed an Amended U.S. Individual Income Tax Return (Form 1040X) on October 15, 2010, seeking a refund of $509,752 from his 2005 taxes attributable to his 2007 NOL. Id.

Plaintiff timely filed (with extensions) his 2009 U.S. Individual Income Tax Return (Form 1040) on October 15, 2010, claiming an NOL of $2,194,793. Def.'s SMF ¶ 4; Pl.'s Responsive SMF ¶ 4. He also timely filed an Application for Tentative Refund (Form 1045) on October 15, 2010, seeking a refund of $806,586 from his 2004 taxes attributable to his 2009 NOL. Def.'s SMF ¶ 4; Pl.'s Responsive SMF ¶ 4. This Form 1045 was the only document submitted by Plaintiff to the IRS that sought a refund of income taxes for the 2004 tax year. Def.'s SMF ¶ 4; Pl.'s Responsive SMF ¶ 4.

### B. IRS Audit

On or about February 4, 2008, the Internal Revenue Service ("IRS" or "Service") initiated an audit of Plaintiff's taxes, in particular his Amended U.S. Individual Income Tax Return (Form 1040X) for the 2005 tax year, filed on November 29, 2007. Dkt. No. 26-15, Ex. F ("Donnelly Declaration"), ¶ 2. The examining officer was Anne Donnelly, an IRS revenue agent. Id. ¶ 1. As part of the audit, Donnelly communicated with Plaintiff's power of attorney, John Gilooly. Id. ¶ 3. Gilooly, a certified public accountant, had prepared tax returns for Plaintiff and several of Plaintiff's business interests for approximately twenty years. Pl.'s SMF ¶ 5; Def.'s SMF ¶ 5. The audit continued until September 8, 2009, when Donnelly suspended her work. Donnelly Decl., Ex. 1, at 8;[4] see also Pl.'s SMF ¶ 31; Def.'s Responsive SMF ¶ 31.

---

[4] The cited page numbers for this Exhibit refer to those generated by the Court's electronic filing system ("ECF").

## C. Criminal Investigation

In 2009, the United States Attorney's Office for the Northern District of New York ("USAO") initiated a criminal investigation into mortgage, bank, and tax fraud with respect to Plaintiff and FGM. Pl.'s SMF ¶ 19; Def.'s Responsive SMF ¶ 19. On June 9, 2009, the USAO, with the assistance of agents from the IRS and the Federal Bureau of Investigation, executed a search warrant on FGM's office in Saratoga Springs and Gilooly's offices. Def.'s SMF ¶ 9; Pl.'s SMF ¶ 9. The agents seized hundreds of boxes of documents, computers, servers, and other items from FGM. Pl.'s SMF ¶ 18; Def.'s Responsive SMF ¶ 18. The USAO also issued subpoenas to dozens of entities related to Plaintiff. Pl.'s SMF ¶ 19; Def.'s Responsive SMF ¶ 19. On September 8, 2009, the IRS suspended the audit to await the completion of the criminal investigation. Pl.'s SMF ¶ 31; Def.'s Responsive SMF ¶ 31.

On or around January 13, 2011, the investigators served a subpoena on Gilooly, and he produced documents in or around March 2011. Pl.'s SMF ¶ 20; Def.'s Responsive SMF ¶ 20.[5]

On multiple occasions between 2011 and 2014, Plaintiff's representatives contacted the IRS—both through phone calls and in-person visits to the IRS office in Glen Falls, New York—to discuss Plaintiff's outstanding refund requests. Pl.'s SMF ¶ 34; Def.'s Responsive SMF ¶ 34. The IRS informed Plaintiff's representatives that the refund requests were being "held." Pl.'s SMF ¶ 34; Def.'s Responsive SMF ¶ 34.

In or around August 2014, the USAO declined to prosecute Plaintiff. Pl.'s SMF ¶ 21; Def.'s Responsive SMF ¶ 21. On or around December 11, 2014, Plaintiff's tax file was removed

---

[5] The parties dispute the content of the documents that Gilooly produced in response to this subpoena. See Pl.'s SMF ¶ 20; Def.'s Responsive SMF ¶ 20.

from the IRS's fraud suspense, and Agent Donnelly resumed her review of the file. Pl.'s SMF ¶ 32; Def.'s Responsive SMF ¶ 32; Donnelly Decl., Ex. 1, at 8. Plaintiff commenced this action soon thereafter on January 7, 2015.

## III.  LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure instructs courts to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment, "summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991) ("Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted.").

The party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Similarly, a party is entitled to summary judgment when the nonmoving party carries the ultimate burden of proof and has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

In attempting to repel a motion for summary judgment after the moving party has met its initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

475 U.S. 574, 586 (1986). At the same time, a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 742 (2d Cir. 1998). Thus, a court's duty in reviewing a motion for summary judgment is "carefully limited" to finding genuine disputes of fact, "not to deciding them." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

## IV. DISCUSSION

### A. 2009 NOL Carryback for the 2004 Tax Year

Under the doctrine of sovereign immunity, no suit may be brought against the United States unless it has explicitly consented by statute to be sued. United States v. Dalm, 494 U.S. 596, 608 (1990). When a statutory waiver of immunity exists, the government may establish the terms of its consent, with which a plaintiff must strictly comply. Lane v. Pena, 518 U.S. 187, 192 (1996). If such terms are not met, a court does not have jurisdiction over the suit—or specific claims therein—and it must be dismissed. F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994).

For actions that seek the recovery of taxes alleged to have been erroneously or illegally assessed or collected by the United States, Congress has waived sovereign immunity through 28 U.S.C. § 1346. United States v. Forma, 42 F.3d 759, 763 (2d Cir. 1994). However, under 26 U.S.C. § 7422(a), a plaintiff must "duly file[]" a claim with the IRS before initiating an income tax refund action in federal court. See Dalm, 494 U.S. at 601 ("Despite its spacious terms, § 1346(a)(1) must be read in conformity with other statutory provisions which qualify a taxpayer's right to bring a refund sit upon compliance with certain conditions. The first is § 7422(a) . . . ."). The statute provides:

7

> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected . . . until a claim for refund or credit has been duly filed with the Secretary [of the Treasury], according to the provisions of law . . . and the regulations of the Secretary established in pursuance thereof.

§ 7422(a).

The Government argues that Plaintiff failed, as required by § 7422(a) and the relevant implementing regulations, to duly file a claim for refund with respect to the 2009 NOL carryback for the 2004 tax year, and thus this Court lacks jurisdiction over this claim. Def.'s Mem. at 4–6. The Court agrees.

Regulations promulgated by the Department of the Treasury describe the manner in which a refund claim should be made. See 26 C.F.R. § 301.6402–3(a)(1) ("In general, in the case of an overpayment of income taxes, a claim for credit or refund . . . shall be made on the appropriate income tax return."). Because Plaintiff is seeking a refund of individual income tax, "a claim for refund shall be made on a Form 1040X ('Amended U.S. Individual Income Tax Return')." Id.; Weisman v. C.I.R., 103 F. Supp. 2d 621, 627 (S.D.N.Y. 2000).

It is undisputed that Plaintiff did not comply with Section 301.6402–3(a)(2) by filing a Form 1040X for the 2004 tax year with respect to the 2009 NOL carryback. Def.'s SMF ¶ 4; Pl.'s Responsive SMF ¶ 4. Instead, he filed a Form 1045 ("Application for Tentative Refund"), pursuant to 26 U.S.C. § 6411(a), which provides the right to apply for a tentative carryback adjustment. Def.'s SMF ¶ 4; Pl.'s Responsive SMF ¶ 4. The relevant provisions of law and the IRS's regulations could not be clearer in stating that Form 1045 "shall not constitute a claim for credit or refund" as required by § 7422(a). See § 6411(a) ("an application under this subsection

8

shall not constitute a claim for credit or refund."); Treas. Reg. § 1.6411-1(b)(2) ("An application for a tentative carryback adjustment does not constitute a claim for credit or refund.").

Nevertheless, Plaintiff argues that his Form 1045, coupled with additional written and oral submissions to the IRS, constitutes a timely informal claim that satisfies the jurisdictional requirement of § 7422(a). Pl.'s Mem. at 10–11. The Court disagrees.

The informal claim doctrine permits a taxpayer's informal request, "i.e. one that does not comply with the formal requirements of the statute and regulations," to satisfy § 7422 under certain conditions. Sumrall v. C.I.R., 83 T.C.M. (CCH) 1405, at *5 (T.C. 2002). The Supreme Court first recognized this doctrine in United States v. Kales, 314 U.S. 186 (1941), and while "[t]here are no bright line rules as to what constitutes an informal claim," Sumrall, 83 T.C.M., at *5, federal courts have generally required "three components to an informal claim." New England Elec. Sys. v. United States, 32 Fed. Cl. 636, 641 (1995) (citing Am. Radiator & Standard Sanitary Corp. v. United States, 162 Ct. Cl. 106 (1963)). "First, an informal claim must provide the Commissioner of the IRS with notice that the taxpayer is asserting a right to a refund. Second, the claim must describe the legal and factual basis for the refund. Finally, an informal claim must have some written component." Id.

"Numerous courts have held that an application for tentative refund [Form 1045] does not constitute an 'informal claim' for purposes of satisfying section 7422's administrative exhaustion requirement." McKenzie v. I.R.S., No. 12-cv-1336, 2013 WL 1181801, at *6 (W.D. Pa. Mar. 20, 2013); see also Emax Fin. Grp., LCC v. United States V.I., No. 2009-cv-86, 2012 WL 1190470, at *6 (D.V.I. Mar. 31, 2012) ("Numerous courts . . . have rejected the argument that an application for a tentative carryback adjustment is an 'informal claim' for purposes of satisfying

9

section 7422's administrative exhaustion requirement."); I.C.T.S. U.S.A., Inc., v. United States, No. 06-CV-6553, 2007 WL 512791, at *2 (S.D.N.Y. Feb. 15, 2007) ("This argument [that an application for a tentative carryback adjustment may constitute an informal claim], if accepted, would not only contradict the plain meaning of the relevant regulations quoted above but would obliterate the distinction between a tentative application and a formal claim for a refund . . . ."); Kirsh v. United States, 131 F. Supp.2d 389, 392 (S.D.N.Y. 2000) ("[C]ase law firmly supports the notion that Form 1045 does not provide timely informal notice for Form 1040X" (citing Rock v. United States, 279 F. Supp. 96, 98 (S.D.N.Y. 1968))), aff'd, 258 F.3d 131 (2d Cir. 2001). Given the clarity of the statutory language and this case law, the Court will not consider Plaintiff's Application for Tentative Refund (Form 1045) in its analysis of whether he filed a timely informal claim. Emax Fin. Grp., 2012 WL 1190470, at *7.[6]

Plaintiff has not presented any evidence that he submitted relevant written correspondence (other than the Form 1045) to the IRS between October 15, 2010, the date he

---

[6] Plaintiff argues that the IRS did not provide "notice and a timely opportunity to file a Form 1040X," because the IRS did not respond to Plaintiff's Form 1045. Pl.'s Opp. at 6. The IRS typically responds to a Form 1045 within ninety days of submission, but the IRS is not required to do so. See § 6411(b) ("Within a period of 90 days from the date on which an application for a tentative carryback adjustment is filed . . . the Secretary shall make, *to the extent he deems practicable in such period*, a limited examination of the application . . . ." (emphasis added)); see also Comm'r v. Van Bergh, 209 F.2d 23, 25 (2d Cir. 1954) ("It will be observed that the Commissioner's action not only is described as a 'tentative carry-back adjustment', but that he need not make his 'limited examination' at all except 'to the extent he deems practicable' within the ninety days."). As discussed above, the relevant statutory and regulatory language could not be clearer in stating that Form 1045 does not constitute a proper, formal claim for refund. The IRS provides notice to all taxpayers through these documents. Cf. Thrif-Tee, Inc. v. United States, 492 F. Supp. 530, 534 (W.D.N.C. 1979) ("It was not necessary for the Plaintiff to await action by the Secretary on its application for tentative carryback adjustment to file its claim for refund. Such claim could have been filed at any time without regard to action or lack of action on the carryback application.").

10

filed his Form 1040 for the 2009 tax year, and October 15, 2013, the date after which a claim for refund attributable to the 2009 NOL is time barred.[7] Plaintiff's correspondence with the IRS in 2015 and 2016, Pl.'s Opp. at 4, is irrelevant because it occurred after the statute of limitations on his refund claim had run and after Plaintiff had commenced this lawsuit. There is no indication in the communication between the IRS and Plaintiff that the IRS was aware of "the legal and factual basis" for Plaintiff's refund claim before the filing of his Complaint or the running of the statute of limitations. See Pl.'s Opp., Ex. C, at 1–2.[8]

The oral communication between Plaintiff's representatives and the IRS is similarly insufficient to qualify as a timely informal claim. Plaintiff's representative, Terry DeLong, testified that he spoke to the IRS on the phone and visited its office multiple times between 2011 and 2014. Pl.'s Mem, Ex. Q ("DeLong Deposition"), at 78–79. However, DeLong did not testify that he had any substantive conversations with the IRS that would have notified it of the "legal and factual basis" of the claim for refund. When asked about his conversations with the IRS, he testified, "But I mean, we really got nothing, every time we called, we got nothing." Id. at 83. In any event, an informal claim must have a written component, which Plaintiff has not presented, and there is no evidence that the IRS documented these conversations. See Emax Fin. Grp., 2012 WL 1190470, at *5 ("In United States v. Kales, 314 U.S. 1986 (1941), the Supreme Court

---

[7] The applicable period of limitations to file a claim for refund relating to an overpayment of taxes attributable to an NOL carryback is provided in 26 U.S.C. § 6511(d)(2). As relevant to the facts before the Court, a taxpayer must file such a claim within the "period which ends 3 years after the time prescribed by law for filing the return (including extensions thereof) for the taxable year of the net operating loss . . . which results in [the] carryback." § 6511(d)(2)(A).

[8] The cited page numbers for this Exhibit refer to those generated by the Court's electronic filing system ("ECF").

established the general parameters of an informal claim for a tax refund: (1) the claim must be in writing . . . ."); Pinckes v. United States, 7 Cl. Ct. 570, 571 (1985) ("[U]ndocumented oral statements are insufficient.").

Since Plaintiff did not duly file a formal or informal claim for refund regarding his 2009 NOL carryback as applied to the 2004 tax year, this Court lacks jurisdiction over this claim and it must be dismissed.

**B. 2007 NOL Carryback for the 2005 Tax Year**

There is no dispute regarding the Court's jurisdiction over Plaintiff's claim for refund due to an NOL that occurred in 2007, which Plaintiff elected to carryback to his 2005 income taxes. As noted above, IRS regulations direct individual taxpayers to make a claim for refund on Form 1040X. 26 C.F.R. § 301.6402–3(a)(1). Plaintiff timely filed a Form 1040X on October 15, 2010, seeking a refund of his 2005 taxes due to an NOL generated in 2007. Def.'s SMF ¶ 5; Pl.'s Responsive SMF ¶ 5.

With regard to the merits of Plaintiff's claim, "the burden of proof is on the taxpayer to prove an overpayment of tax and the amount he is entitled to recover." Heublein, Inc. v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993); see also Zeeman v. United States, 394 F.2d 861, 865 (2d Cir. 1968) ("It was the well-established rule when the appellant began this suit that the burden of showing her right to carryback her loss . . . would be on her."); Michael I. Saltzman & Leslie Book, IRS Practice and Procedure ¶ 1.04[2] (2d ed. 2005). However, a plaintiff may shift the burden of proof to the Government "with respect to any factual issue related to a taxpayer's tax liability if they maintained adequate records, satisfied applicable substantiation requirements, cooperated with [the IRS], and introduced during the court proceeding credible evidence on the

factual issues." Tilman v. United States, 644 F. Supp.2d 391, 398 (S.D.N.Y. 2009) (quoting Gutierrez v. Comm'r, 86 T.C.M. (CCH) 611, at *2 (T.C. 2003)).

Plaintiff argues that his burden does not apply to the income taxes he paid for the 2005 tax year, because the IRS may no longer assess previously undiscovered deficiencies against him regarding his 2005 income taxes due to the expiration of the relevant statute of limitations. Pl.'s Mem. at 5–9. This is not correct.

A claim for refund based on an NOL puts at least two tax returns at issue: The return for the year in which the NOL occurred and the return for the year to which the NOL is being applied. Plaintiff has put his 2005 income taxes at issue by seeking a refund from the taxes he paid for 2005. Case law is clear that time limitations on the IRS's ability to assess previously undiscovered deficiencies do not affect its—and this Court's—duty to determine whether a refund is properly due. The Supreme Court settled this issue in Lewis v. Reynolds, 284 U.S. 281 (1932), which courts have applied consistently since. In Lewis, the Supreme Court stated, "[T]he ultimate question presented for decision, upon a claim for refund, is whether taxpayer has overpaid his tax. This involves a redetermination of the *entire tax liability*. While no new assessment can be made, after the bar of the statute has fallen, the taxpayer, nevertheless, is not entitled to a refund unless he has overpaid his tax." Id. at 283 (emphasis added); see also Fisher v. United States, 80 F.3d 1575, 1581 (Fed. Cir. 1996) ("Lewis and Dysart together stand for the proposition that the government may offset against a tax refund claim any additional amounts the taxpayer owes with respect to the tax shown on the return, even though the statute of limitations would bar assessing the additional amount owed."); Dysart v. United States, 340 F.2d 624, 628 (Ct. Cl. 1965) ("It is not enough that [the taxpayer] can prevail on the particular items on which

13

he sues, for he may have underpaid with respect to other components entering into that tax . . . . His entire tax liability under the particular tax return is therefore open for redetermination."); Saltzman ¶ 11.02[1][a] ("Under the principles of Lewis v. Reynolds, the Service is permitted to reduce the amount of the taxpayer's refund by the correct tax for the year, even if the Service can no longer assess the amount of any deficiency it may have determined to be due."). Plaintiff bears the burden of proof that the taxes he paid in 2005 and the loss he claimed in 2007 are correct.

The Government raises two deficiencies with regard to Plaintiff's tax returns: (1) the inclusion of $4,510,050 in expenses for "cost of goods sold" on Plaintiff's 2005 Schedule C for his mortgage consultancy business, and (2) the loss of Plaintiff's $2,129,876 investment in DRS, which created the NOL on his 2007 return. Def.'s Mem. at 16–21.[9]

On his original 2005 tax return, Plaintiff subtracted $4,510,050 from his gross business income as a mortgage consultant for "cost of goods sold." Dkt. No. 26-8, Ex. D3, at 6–7. He did not amend these expenses on his Form 1040X for the 2005 tax year, filed on October 15, 2010. Dkt. No. 26-11, Ex. D6, at 2.[10] Under 26 C.F.R. § 1.61–3(a), "[t]he cost of goods purchased for resale in a taxpayer's business [may be] subtracted from gross receipts to compute gross

---

[9] Since both parties moved for summary judgment, the Court "must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." Schwabenbauer v. Bd. of Ed. of City Sch. Dist. of City of Olean, 667 F.2d 305, 314 (2d Cir. 1981). Because this section considers the Government's argument that Plaintiff did not provide proper support for his 2005 or 2007 tax returns, Def.'s Mem. at 16–21, "the Court is obligated to draw all factual inferences in favor of" Plaintiff, Reeves, 530 U.S. at 150.

[10] The cited page numbers for this Exhibit refer to those generated by the Court's electronic filing system ("ECF").

income." Newman v. Comm'r, 80 T.C.M. (CCH) 661, at *2 (T.C. 2000). However, Plaintiff did not submit any records to justify these expenses or why he is entitled to include such expenses on his personal tax return. Plaintiff admits that he does not have an ownership interest in FGM, the entity that directly incurred these expenses; instead, he claims that he is entitled to subtract FGM's cost of goods from his business income because of an expense-sharing agreement between FGM and other entities he owned. Dkt. No. 27-18, Ex. O ("Silipigno Deposition"), at 25. Plaintiff did not submit any records that verify this arrangement.

Taxpayers must keep sufficient records to substantiate the cost of goods sold. § 6001; Newman, 80 T.C.M. (CCH) at *2. Without such records, Plaintiff is not able to demonstrate that his 2005 taxes were filed correctly. Wages v. Comm'r, T.C.M. (RIA) 2017-103, at *19–20 (T.C. 2017) ("All we have before us are petitioners' unsubstantiated claims in their petition, brief, and other filings that they incurred certain expenses. These unsupported statements are insufficient to justify even the roughest estimate of their true expenses."); WB Acquisition, Inc. v. Comm'r, 101 T.C.M. (CCH) 1157, at *20 (T.C. 2011) ("Petitioners have not provided receipts, invoices, canceled checks, or any other evidence to prove the nature of these [cost-of-goods] expenses or whether such expenses were paid. Accordingly, petitioners have failed to meet their burden of proof . . . .").

Plaintiff's record keeping was clearly complicated by the fact that federal investigators seized thousands of records from FGM and Gilooly on June 9, 2009. Pl.'s SMF ¶ 18; Def.'s Responsive SMF ¶ 18. Plaintiff raised this fact multiple times in his papers, even after he consented to the dismissal of his claim for equitable restitution. E.g., Pl.'s Opp. at 11. Nevertheless, he does not present an argument as to its relevance, possibly because "equitable

15

considerations" will not affect Plaintiff's burden except in the most extraordinary circumstances. See Fisher, 80 F.3d at 1581; Andrew Crispo Gallery, Inc. v. Comm'r, 16 F.3d 1336, 1341 (2d. Cir. 1994). Plaintiff has not attempted to show that his experience was extraordinary or even to delineate what documents might have been lost in the 2009 raid, which might justify their absence from the record. In addition, Plaintiff failed to produce records during the initial phase of the IRS audit in 2008, more than a year prior to the raid, when asked for documentation to support these expenses. Donnelly Decl. ¶ 5. Plaintiff also reaffirmed the validity of his 2005 tax return under the penalty of perjury when he filed his Form 1040X for 2005 on October 15, 2010, more than a year after the raid occurred.[11]

While the Court is sympathetic to the large number of years over which the investigation spanned, Plaintiff is not excused from his responsibility to maintain sufficient records to justify his returns. Given the complete lack of records submitted in support of Plaintiff's 2005 "cost of goods" expenses, no reasonable jury could find that Plaintiff was entitled to subtract these expenses from his business income. Therefore, Plaintiff's 2005 income taxes were under-

---

[11] The parties dispute whether additional documents were taken from Plaintiff's possession in 2011, when Gilooly responded to a subpoena issued by the USAO. Pl.'s SMF ¶ 20; Def.'s Responsive SMF ¶ 20. However, the Government submitted the only sworn statement from a person with personal knowledge of the documents produced in response to the 2011 subpoena. See Dkt. No. 26-19, Ex. J, ("Carruthers Declaration") ¶ 4. IRS Special Agent Julie Carruthers states in this declaration that "[t]he documents obtained pursuant to the subpoena served on Mr. Gilooly in January 2011 were only copies of some of Mr. Silipigno's previously filed tax returns." Id. Plaintiff did not submit any sworn statement from a person with personal knowledge of these documents to dispute this declaration. Therefore, the Court shall credit Carruthers's description of the documents produced. Fed. R. Civ. P. 56(c)(4); Deshais v. Consol. Rail Corp., 956 F. Supp. 230, 238 (N.D.N.Y. 1997) ("It is well settled that affidavits of persons without personal knowledge of the facts, inadmissible hearsay statements, and conclusory allegations are not sufficient to defeat a properly supported summary judgment motion.").

reported based on the inclusion of $4,510,050 in cost-of-goods expenses on his Schedule C for his mortgage consultancy business.

Although the IRS is time barred from assessing this deficiency, it may be used to offset any refund to which Plaintiff is entitled. Even if the Court were to find that he is entitled to carryback the $1,414,014 in net operating losses from 2007 to 2005, the deficient $4,510,050 in gross income would negate any refund to which Plaintiff would be entitled. Thus, the Court will not address whether Plaintiff's 2007 NOL was calculated properly. In any event, Plaintiff has failed to demonstrate that a reasonable jury could return a verdict on his behalf. Therefore, Plaintiff's Motion must be denied and Defendant's Motion, with respect to the requested refund from Plaintiff's 2005 taxes, must be granted.

## V.     CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Plaintiff's Second Cause of Action (Dkt. No. 1) is **DISMISSED for lack of subject matter jurisdiction**; and it is further

**ORDERED**, that Defendant's Motion for summary judgment (Dkt. No. 26) is **GRANTED in part**; and it is further

**ORDERED**, that Plaintiff's Motion for summary judgment (Dkt. No. 27) is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court enter judgment for the Defendant and close this case; and it is further

**ORDERED**, that the Clerk serve copies of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:   July 12, 2017
         Albany, New York

_Lawrence E. Kahn_
Lawrence E. Kahn
U.S. District Judge